UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:10-CV-21125-HOEVELER

CDI, INC.,
a Florida Corporation

    Plaintiff,

vs.

MURAD, INC.,
a California Corporation

    Defendant.
_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

  Plaintiff, CDI, Inc. ("CDI"), by undersigned counsel and pursuant to S.D. Fla. L.R. 7.1 & 7.5, hereby submits its Memorandum in Opposition to Defendant, Murad, Inc.'s ("Murad") Motion for Summary Judgment [DE #23] ("Murad's Motion"), and states as follows:

**I.  INTRODUCTION.**

  Both this Court and the Eleventh Circuit Court of Appeals have held that the determination of a likelihood of confusion is generally a question of fact that is more appropriately reserved for the jury. Thus, considering the significant amount of evidence that both this Court and the Eleventh Circuit require to demonstrate entitlement to summary judgment on the issue of likelihood of confusion, it is abundantly clear that Murad's Motion falls woefully short of meeting its burden. Not a single factor considered in a likelihood of confusion analysis weighs in favor of granting Murad's request for summary judgment on the issue. To wit, Murad admits that several of the factors to consider ***support*** a finding of likelihood of

confusion; Murad's contentions that the DR. BRANDT Trademarks (*i.e.*, U.S. Trademark Reg. Nos. 3,483,036 & 3,084,588) are weak and that the factor of intent is lacking are inadequately supported by self-serving testimony and an incomplete record; and Murad's only purported evidence of actual confusion is a survey study which utilizes an inapplicable survey strategy, a conveniently selected and under-inclusive universe, and ignores the virtually phonetic identity between the marks in question.

Murad's remaining arguments fair no better.  As articulated by the case law cited in support of Murad's Motion, the file histories of the DR. BRANDT Trademarks do not serve as conclusive evidence on the issue of likelihood of confusion, and therefore, cannot undisputedly support entitlement to summary judgment on the issue.  Moreover, the Opposition Division of the European Union's Office of Harmonization in the Internal Market recently granted CDI's opposition of Murad's Community trademark application for THE DOCTOR BRAND on the basis that registration of the mark would likely cause confusion with CDI's registered Community trademark, DR. BRANDT.  At a minimum, the Opposition Division's findings create a disputed issue of material fact which precludes summary judgment on the issue of likelihood of confusion.

With respect to Murad's argument that it did not abandon its mark, similar to the issue of likelihood of confusion, abandonment involves questions of fact that should be reserved for the trier of fact.  Furthermore, the record before the Court in support of Murad's Motion is far too inadequate to support a finding that such a factually intensive inquiry as abandonment is appropriate at this stage of the litigation.

Pursuant to the foregoing, and the following arguments in support thereof, this Court should deny Murad's Motion.

**II.     ARGUMENT.**

    **A.     Summary Judgment Standard.**

Summary judgment is only appropriate "if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.,* 420 F.3d 1317, 1326 (11th Cir. 2005). The moving party "bears the initial burden of showing that there is an absence of a genuine issue of material fact and that it is therefore entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Only if the moving party meets this burden, must the non-moving party show the existence of a genuine issue of material fact that remains to be resolved at trial. *Adkins v. Cagle Foods JV, LLC,* 411 F.3d 1320, 1324 (11th Cir. 1993). The Court must review the facts and all reasonable inferences in the light most favorable to the non-moving party. *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC,* 369 F.3d 1197, 1202 (11th Cir. 2004) (*citing Pennington v. City of Huntsville,* 261 F.3d 1262, 1265 (11th Cir. 2001)).

    **B.     Murad's Motion Does Not Undisputedly Demonstrate The Absence Of A Likelihood Of Confusion In This Matter**.

        **1.     The existence of a likelihood of confusion is a question of fact that is generally reserved for the jury.**

Both this Court and the Eleventh Circuit Court of Appeals have held that trademark infringement cases – which necessarily implicate likelihood of confusion issues – ordinarily involve questions of fact to be tried by a jury. *Coach Services, Inc. v. 777 Lucky Accessories, Inc.*, No. 09-61590, 2010 WL 2427432, at *2 (S.D. Fla. June 16, 2010) ("the Court finds that trademark infringement cases, along with allegations of false designation of origin, trademark dilution, common law unfair competition, and violation of Florida's Deceptive and Unfair Trade Practices Act are ordinarily tried by a jury") (citing *Alliance Metals, Inc., of Atlanta v. Hinely*

3

*Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) (stating that the likelihood of confusion test used to determine trademark infringement is generally a question of fact); *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 840 n. 16 (11th Cir. 1983) (clarifying that the likelihood of confusion test is a question of fact in the Eleventh Circuit); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir. 1983) (finding sufficient evidence for jury's verdict on trademark infringement, unfair competition, and deceptive trade practices); *Provide Commerce, Inc. v. Preferred Commerce, Inc.*, No. 07-80185, 2008 WL 926777, at *3 (S.D. Fla. April 4, 2008) (denying defendant's motion for summary judgment on trademark infringement and common law trademark infringement claims because there were issues of fact that required a jury's determination)); *see also Slip-N-Slide Records, Inc. v. TVT Records, Ltd.*, 2007 WL 473273, at *9 (S.D. Fla. Feb. 8, 2007) (denying parties' motions for summary judgment on TVT's trademark infringement claims and noting that "determining likelihood of confusion is often a jury issue").

Moreover, both this Court and the Eleventh Circuit have held that the movant's burden on summary judgment is akin to the higher burden required on a motion for judgment as a matter of law under Fed. R. Civ. P. 50 when likelihood of confusion is involved:

> Whether two products are confusingly similar is a question of fact. *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 839 (11th Cir. 1983). Thus, a grant of summary judgment on likelihood of confusion is proper only if no reasonable jury could return a verdict for the party against whom summary judgment is sought. *See Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.,* 130 F.3d 1009, 1013 (11th Cir. 1997).

*Florida Breckenridge, Inc. v. Solvay Pharmaceuticals, Inc.*, No. 97–8417, 1998 WL 468753, at *5 (S.D. Fla. March 18, 1998). In view of the significant burden imposed by both this Court and the Eleventh Circuit, it is clear that Murad has failed to demonstrate entitlement to summary judgment on the issue of likelihood of confusion.

4

### 2. Murad's Motion does not undisputedly demonstrate that the strength of the DR. BRANDT Trademarks has been weakened.

Murad contends that third-party use has weakened the strength of the DR. BRANDT Trademarks; however, in support Murad erroneously cites to third-party registrations from the United States Patent and Trademark Office ("USPTO") which only identify the individual elements of the DR. BRANDT Trademarks (*i.e.*, "Dr." or "Doctor," when the terms are not used in combination with "Brandt," and vice-versa) as opposed to identifying third-party registrations which are identical or similar to the DR. BRANDT Trademarks *as a whole*.  This Court's sister court – relying on binding precedent – has noted that, "[w]hen analyzing the component parts of a mark in isolation, there is some risk that the 'distinctiveness of the words in combination will be overlooked.'" *Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc.*, 828 F. Supp. 925, 933 (M.D. Fla. 2008) (quoting *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 116 (5th Cir. 1979)); *see also Autozone, Inc. v. Tandy Corp.*, 373 F.3d 786, 795 (6th Cir. 2004) ("[T]he validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace"); *Perfetti Van Melle USA v. Cadbury Adams USA LLC*, 732 F. Supp. 2d 712, 719 (E.D. Ky. 2010) ("Cadbury's argument, which requires breaking down Perfetti's marks into their individual components and assessing the strength of each component term in isolation, runs contrary to the established principle that 'the validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace.'").  Indeed, when a search of the combined terms "Dr. Brandt" or "Doctor Brandt" is executed, the only registrations that appear are those belonging to CDI.  SOF at ¶33;[1] *Express Welding, Inc. v. Superior Trailers, LLC*, 700 F. Supp. 2d 789, 798 (E.D. Mich.

---

[1] References to CDI's accompanying Statement of Material Facts in Opposition to Murad's Motion are cited herein as "SOF ¶__."

5

2010) ("While the defendant has introduced some evidence suggesting that the component parts "nitro," "stinger" and "spreader" have been used by third-parties to denote trailer attachments, there is no evidence of extensive third-party use, and the defendants have introduced no evidence that the composite marks as a whole have been used by anyone other than the plaintiff and the defendant to signify the trailers and accessories as used here. This factor therefore favors a finding of a likelihood of confusion.")

Moreover, with the exception of fourteen (14) marks, Murad cites to numerous registrations without providing any additional evidence that these marks are being used in commerce. SOF ¶¶20-24. Without additional evidence of third party use, Murad's citation to these registrations alone is insufficient to support a finding that third-party use has somehow weakened the DR. BRANDT Trademarks. *In re Mighty Leaf Tea*, 601 F.3d 1342, 1347 (Fed. Cir. 2010) ("the [US]PTO states that the mere presence of similar third-party registrations, without more, is of only limited value for showing whether additional entrants would lead to confusion in use"); 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:89 (4th ed. 2009) ("The mere citation of third party registrations is not proof of third party uses for the purpose of showing a crowded field and relative weakness.").

Murad's argument is further flawed by isolating the term, "BRANDT" and arguing that surnames are generally regarded as descriptive. Def.'s Mot. at p. 9. The DR. BRANDT Trademarks, however, do not disclaim the term "BRANDT" as it is used *in combination* with the term "DR." SOF at ¶34.[2] Furthermore, with respect to U.S. Trademark Reg. No. 3,084,588,

---

[2] The Court should further note that Murad failed to support its statement with exhibits and failed to identify the class of goods and services corresponding to the 16 third-party registrations incorporating the mark "Brandt." SOF at ¶24; *Cold Auto Air of Clearwater, Inc.*, 828 F. Supp. at 933 ("courts have also considered the extent to which a mark is used by third parties *in the same industry*") (emphasis added).

6

the mark has acquired incontestable status, *id.* at ¶35, thus precluding Murad from arguing that the registered trademark is somehow descriptive. *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 191, 105 S.Ct. 658 (1985) ("…we consider whether an action to enjoin the infringement of an incontestable trade or service mark may be defended on the grounds that the mark is merely descriptive. We conclude that neither the language of the relevant statutes nor the legislative history supports such a defense").

The authority cited in support of Murad's argument that the DR. BRANDT Trademarks have somehow been weakened by third-party use is also inapposite. Unlike the matter at hand, the cases cited in Murad's Motion involve common, English words that were used in the same field/market as the marks in question. *World Triathlon Corp., Inc. v. Dawn Syndicated Productions, Inc.*, 2007 WL 2875456 (M.D. Fla. Sept. 28, 2007) (court analyzed use of "Ironman" which was found to be a "common English word that is regularly used by third parties within the sports market," thus, mark, despite incontestable status, was weak); *Carnival Corp. v. Seaescape Casino Cruises*, 74 F. Supp. 2d 1261 (S.D. Fla. 1999) (finding extensive use of the word "fun" in the travel and gaming industry reduced the strength of the mark).

In addition to the undisputable fact that the registration of the DR. BRANDT Trademarks creates a rebuttable presumption that the marks are protectable or distinctive, *see* 15 U.S.C. § 1057(b), the extensive publicity and high-end recognition of the DR. BRANDT Trademarks further supports this presumption and, at a minimum, disputes any contention that the DR. BRANDT Trademarks are weak. SOF at ¶36.

> **3. Murad's Motion does not undisputedly demonstrate that the marks at issue are dissimilar.**

Murad's Motion does not rely upon a single affidavit, declaration, or citation to record evidence in support of its contention that Murad's use of THE DOCTOR BRAND is "different

7

in visual appearance and meaning" than the DR. BRANDT Trademarks. In fact, Murad admits that "[t]hey are audibly identical" and that there is "similarity in pronunciation" between the two. Def.'s Mot. at p. 9. Despite Murad's attempt to downplay the importance of phonetic similarity of the marks, it is clear that phonetic similarity supports a finding of a likelihood of confusion, and at a minimum, presents a disputed issue of material fact that precludes summary judgment. Furthermore, the importance of phonetic similarity in a likelihood of confusion analysis is duly supported by expert opinion and applicable authority. SOF at ¶¶44-45; *Fuddrucker's, Inc. v. Fudpucker's, Inc.*, 436 F. Supp. 2d 1260 (N.D. Fla. 2006) (similarity in sound of FUDDRUCKER'S and FUDPUCKER'S favored likelihood of confusion); *Home & Land Affiliates, LLC v. Home & Loans Magazine, LLC*, 598 F. Supp. 2d 1248 (M.D. Fla. 2009) (similarity in sound favored likelihood of confusion); *Crown Radio Corp. v. The Soundscriber Corp.*, 506 F.2d 1392 (CCPA, 1974) (cited in support of Murad's Motion, finding that the similarity in sound between words CROWNSCRIBER and SOUNDSCRIBER weighed *in favor* of a likelihood of confusion).

In addition to phonetic similarity, and as noted by the Opposition Division, the DR. BRANDT Trademarks and THE DOCTOR BRAND also share visual similarity in that both coincide in "BRAND," and where the element "THE" contained in THE DOCTOR BRAND can be discounted as a common article. SOF at ¶48.

> **4.    Murad has admitted that there is a similarity of goods, a similarity of parties, a similarity of channels of trade, and a similarity in advertising media.**

Murad's Motion admits that "the goods identified by the DR. BRANDT trademark are related to those produced by Murad" and furthermore, that "the goods of the parties are both skin care products." Def.'s Mot. at p. 10. Notwithstanding its own admission that this factor weighs

8

in favor of a finding of a likelihood of confusion, Murad argues that the similarities between the parties' goods "does not alone support a finding of likely customer confusion." *Id*. Murad misses the mark by implying that CDI must affirmatively demonstrate a likelihood of confusion in order to successfully oppose Murad's Motion. By Murad's own admission, however, the similarity between the parties' goods weighs in favor of precluding summary judgment ***on Murad's contention that there is <u>no</u> likelihood of confusion***. Furthermore, Murad conveniently fails to inform the Court that CDI's Blemishes No More® product bears the DR. BRANDT trademark, and is expressly marketed as a blemish and acne treatment product. SOF at ¶37.

In addition to admitting that there is a similarity of goods, Murad also concedes that the parties and channels of trade in which the parties' products are sold are similar, and that there is a similarity in the parties' advertising media. Def.'s Mot. at p. 10. These admissions further weigh against awarding Murad summary judgment on the issue of likelihood of confusion.

### 5. The issue of intent should not be resolved on summary judgment, particularly where the record is incomplete.

This Court has held that "intent is a question of fact that is not easily resolved on a motion for summary judgment." *Guthartz v. Park Centre West Corp.*, No. 07-80334, 2009 WL 278960, at *4 (S.D. Fla. Feb. 5, 2009) (citing *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) (intent is question of fact for the fact-finder)). Murad's only support for its contention that the issue of intent weighs in Murad's favor is the self-serving affidavit of Murad's General Manager, Richard S. Murad. Murad cannot defeat CDI's allegation that Murad has "engaged in [infringing] activity knowingly, willfully, with actual malice, and in bad faith" [Am. Compl., DE #4, at ¶35] by submitting a self-serving affidavit that denies the same – indeed, that is the equivalent of denying the allegation through a responsive pleading.

9

*Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (Fed. Cir. 1980) ("intent is always a subjective matter of inference and thus rarely amenable to summary judgment").

Furthermore, while Murad argues that "there is no evidence in the record whatsoever that Murad adopted THE DOCTOR BRAND trademark in bad faith," Def.'s Mot. at p. 11, CDI has not yet had the opportunity to take depositions of those with knowledge regarding facts that may be material to the issue of intent, including but not limited to the deposition of Richard Murad.[3] It is well established that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery … [a] party opposing summary judgment should be given the opportunity to discover information relevant to the summary judgment motion." *Dean v. Barber*, 951 F.2d 1210, 1213-14 (11th Cir. 1992) (citing *Snook v. Trust Co. of Ga.,* 859 F.2d 865, 870 (11th Cir.1988)); *Nelson v. C.K. Nelson, Inc.*, No. 07-61416, 2008 WL 961496, at *1 (S.D. Fla. April 9, 2008) (when ruling on summary judgment motions, "the Eleventh Circuit has held that 'summary judgment may only be decided upon an adequate record.'").

### 6. Murad's survey evidence should be disregarded as evidence of actual confusion.

As opined by CDI's survey expert, Alvin Ossip, the survey conducted by Mr. Kenneth Hollander (the "Hollander Survey") is inadequate to support a finding that confusion is not likely as a matter of law because, 1) the Hollander Survey utilizes a survey strategy that is inapplicable to the matter at hand, and thus, "sheds no light on the extent of any likelihood of confusion that

---

[3] The parties jointly requested an extension of the discovery deadline up to and until December 30, 2011 so that the parties' resources could be more productively applied towards resolving this matter through the mediation that is currently scheduled on August 17, 2011 and/or August 18, 2011. [DE #36]. This Court granted the parties' request. [DE #38]. SOF at ¶1.

might exist;" 2) the universe chosen for the Hollander Survey is under-inclusive; and 3) the Hollander Survey ignores the phonetic similarity between the parties' marks. SOF at ¶28.[4]

                              a.      *The Eveready Format adopted by the Hollander Survey is inapplicable.*

The strategy used in the Hollander Survey is derived from the "Eveready Format" first articulated by the Seventh Circuit Court of Appeals in *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 188 U.S.P.Q. 623 (7th Cir. 1976). SOF at ¶39. In *Union Carbide*, a picture of the junior user's product (*i.e.*, an Ever-Ready lamp), but not the senior user's product, was exposed to the survey respondents. *Id*. Because the junior user's product is the only product that is revealed to the respondents, the Eveready Format is effective in measuring likelihood of confusion only if the senior user's mark or maker is well known (such as was true with Eveready batteries in *Union Carbide*) among the surveyed respondents. *Id*.

In surveys utilizing the Eveready Format, respondents who are not aware of the senior user's mark or maker, by definition, cannot be confused between the two. *Id*. For example, in *Simon & Schuster* – a case similar to the matter at hand – the defendant's survey ("the Passman Survey") utilized a variation of the Eveready Format (*i.e.*, the respondents were shown only the junior product (or brand name) and asked questions such as: (1) Who do you think puts out this product? (2) What makes you think so? and (3) Name any other products put out by the same concern which puts out this product; respondents naming the senior manufacturer or its products provide evidence of likelihood of confusion). *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 289 (S.D.N.Y. 1997). There, the district court held,

---

[4] In addition to introducing a flawed survey, Murad's only other support for actual confusion is, once again, the self-serving testimony of Richard Murad. Def.'s Mot. at p. 11. As set forth above, Murad cannot rely on this testimony in support of its request for summary judgment wherein CDI has not had the opportunity to conduct a single deposition in this matter.

> [b]ecause respondents were not shown any of plaintiffs' products, Passman conceded that his survey confronted only conscious confusion, or "top-of-mind" awareness. [Citations omitted]. The Passman Survey did not attempt to determine the level of confusion that would might [*sic*] result on an "aided" awareness basis. *Id.* Nor did it attempt to ascertain whether respondents believed that defendant's and plaintiffs' products emanated from a common, albeit anonymous, source. [Citations omitted]. These factors may have tended to underestimate significantly the likelihood of confusion found. ***Perhaps most importantly, the "Eveready" survey design selected by Passman may not have been the most appropriate format given the type of product at issue in this litigation. As one author in this area has recognized, surveys of this type are "less likely to reveal confusion if respondents think that the junior mark is the senior mark ... and do not know the name (or products) of the company that puts out the senior mark." [Citations omitted]. Because the marks at issue in this litigation are the titles of books rather than the names of common household products, the Passman Survey's underestimation of the likelihood of confusion may be significant. Only those persons who have heard of plaintiffs' books could be expected to show any confusion with defendant's books.***

*Id*. at 291 (emphasis added). Accordingly, the court afforded "reduced evidentiary significance to the results of the Passman Survey." *Id*. at 299; *see also Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1444-45 (S.D. Ohio 1990) ("the questioners made no attempt to determine, directly or indirectly, if the interviewees had a general recollection of the plaintiff's mark prior to the interview…. The interview should have been designed to implant in the interviewees' minds an impression of the plaintiff's mark *prior* to any questions concerning possible confusion arising upon seeing the defendant's mark").

In the matter at hand, the Hollander Survey made no attempt to obtain a measure of awareness of the DR. BRANDT Trademarks from those surveyed. SOF at ¶41. Because the over-the-counter ("OTC") acne and blemish relief market contains a very large number of brand variations, CDI's products and products bearing the DR. BRANDT Trademarks are likely to enjoy only a small share of that specific market. *Id.* at ¶40. It is therefore likely that consumer awareness of the DR. BRANDT Trademarks among the specific population surveyed (14 to 25 year olds who were mostly likely acne product users) was modest at best. *Id*. In view of the,

likely, low-level of awareness of the DR. BRANDT Trademarks among the universe selected in the Hollander Survey, those actually surveyed did not have *the potential* to be confused. Therefore, the Hollander Survey erroneously selected the Eveready Format for this particular case.

### b. *The universe selected for the Hollander Survey is under-inclusive.*

"[O]ne of the most important factors in assessing the validity of an opinion poll is the adequacy of the 'survey universe,' that is, the persons interviewed must adequately represent the opinions which are relevant to the litigation." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980). "The appropriate universe should include a fair sampling of those purchasers most likely to partake of the alleged infringer's goods or services." *Id*. (discounting survey because the proper universe was not examined). "A universe may be improperly under-inclusive by defining a group narrower than the ideal universe, thus leaving out a group whose perception is relevant." 6 McCarthy on Trademarks and Unfair Competition § 32:161 (4th ed. 2011). A court may disregard a survey as under-inclusive when the age range of the respondents is arbitrarily narrow. *American Basketball Ass'n v. AMF Voit, Inc.*, 358 F. Supp. 981, 986 (S.D.N.Y. 1973) (criticizing pilot survey of the market for multicolored basketballs as deficient and too narrow because "it was limited to a universe of males between the ages of 12 and 23"); *Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528, 531 (7th Cir. 2003) (survey of 13- to 18-year-old girls, many of which considered "beanies" to be the name of the product rather than the plaintiff's brand name, was "worthless" because 13- to 18-year-old girls was "an arbitrary subset of consumers of beanbag stuffed animals").

In the matter at hand, the Hollander Survey was confined to respondents aged 14 to 25 without offering a specific rationale for not including older buyers of either the acne or blemish

13

relief products.[5]  SOF at ¶42.  In contrast, various publications, testimonials, and surveys demonstrate that a meaningful proportion of users of acme and blemish products are over the age of 25.  For example, several testimonials from the website of the licensed distributor of products bearing the THE DOCTOR BRAND name appear to be written by individuals over the age of 25; a blog discussing a blemish product bearing THE DOCTOR BRAND name was written by a woman in her late twenties; an Internet posting by "The Daily Mail" of the UK indicates that "more than half of UK women over 30 struggle with blemishes" and advertises products bearing THE DOCTOR BRAND name; a survey cited in a Journal of the American Academy of Dermatology Internet posting indicates that a substantial proportion of adults between the ages of 30 and 49 suffer from acne problems; and, in a UK study of people 25 and older, 54% of women and 40% of men were affected to some degree with acne.  *Id*. at ¶43.  Moreover, in view of the pricing of CDI's acne and blemish relief products, these products are usually purchased by consumers in their early to mid twenties and older (by Murad's own admission that the goods, channels of trade, parties, and advertising media are similar, these buyers would likewise be potential purchasers of THE DOCTOR BRAND products).  *Id*. at ¶38.

The foregoing demonstrates that the respondents in the Hollander Survey were skewed towards a younger population to obtain a higher population of respondents who are familiar with OTC acne medications, as opposed to choosing a universe that would be more appropriate for CDI's older, higher-end product purchasers.  Indeed, the deficiencies in the Hollander Survey are similar to the survey at issue in *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, wherein the district court held that the survey was flawed and biased based, in part, on the following findings:

---

[5] Although the Hollander Survey states that the universe consisted of respondents between the ages of 13-25, the test results attached to the Hollander Declaration show that respondents of age 13 and younger were not interviewed.  [DE #27 at p. 23 of 55].

> The pool of respondents was skewed towards a younger population to obtain a higher proportion of respondents who are familiar with Couture, as opposed to choosing a universe that mirrors Lancôme's customers generally or even the purchasers of its Juicy cosmetics or Juicy Wear. For instance, one-third of the survey respondents were between the ages sixteen and twenty-four. When it comes to Juicy Wear, almost three-quarters of Lancôme's customers who purchase that product are over the age of thirty-four.

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 2006 WL 1012939, at *25 (S.D.N.Y. April 19, 2006).

> c.   *The Hollander Survey ignores the phonetic similarity between "Dr. Brandt" and "Doctor Brand"*

As previously noted, phonetic similarity can be critical in demonstrating a likelihood of confusion.  SOF at ¶¶44-45; *Fuddrucker's, Inc. v. Fudpucker's, Inc.*, 436 F. Supp. 2d 1260 (N.D. Fla. 2006); *Home & Land Affiliates, LLC v. Home & Loans Magazine, LLC*, 598 F. Supp. 2d 1248 (M.D. Fla. 2009); *Crown Radio Corp. v. The Soundscriber Corp.*, 506 F.2d 1392 (CCPA, 1974).

In the matter at hand, confusion might occur if a user or skin care professional made a verbal recommendation of "Dr. Brandt" and the person receiving the recommendation mistakenly assumed that it was "Doctor Brand" or "Dr. Brand."  SOF at ¶44.  If the person receiving such a recommendation were to subsequently see THE DOCTOR BRAND product they might assume it was the product that was previously recommended.  *Id*. at 45.  If they were to search the Internet they might also reach that conclusion, depending on the specific search terms they used.  *Id*.  For example, using the current Google search engine, if they entered "doctor brand," the first page of results would show one organic listing for Dr. Brandt and four for "The Doctor Brand" products plus one ad for Dr. Brandt.  If they were to enter "Dr. Brand" as the search term they would get Dr. Brandt listings on page one without any "doctor brand" skin care listings.  *Id*.  However, if Murad were to obtain the mark THE DR. BRAND then it is

15

likely that entries for that mark would start to appear on these Google pages. *Id*.[6] The Hollander Survey ignores these similarities without rationale.

      **C.     The USPTO Examiner's Findings Do Not Undisputedly Demonstrate That There Can Be No Likelihood Of Confusion Between the DR. BRANDT Trademarks and THE DOCTOR BRAND.**

Murad assumes that because the USPTO examiner found no similar registered or pending marks during the prosecution of the DR. BRANDT Trademarks that the examiner specifically discovered the mark, THE DOCTOR BRAND, compared that mark with CDI's trademarks, and reached the conclusion that there could be no likelihood of confusion between them. In the context of summary judgment, Murad's Motion assumes that it is ***undisputed*** that the examiner discovered THE DOCTOR BRAND mark during the prosecution of each of the CDI trademarks cited by Murad. Murad's assumption simply is not supported by the record, SOF at ¶19, and ignores the principle that ***no search*** can guarantee that a conflict with another mark may arise in the future. 3 McCarthy on Trademarks and Unfair Competition § 19:6.

Furthermore, the Opposition Division of the European Union's Office for Harmonization in the Internal Market (Trade Marks and Designs) ("OHIM") recently ruled in favor of CDI in CDI's opposition proceedings against Murad's Community Trademark Application No. 7 407 117 for THE DOCTOR BRAND. SOF at ¶47. Specifically, the Opposition Division found that goods bearing CDI's earlier registered trademark DR. BRANDT (Community Trademark Registration No. 3 082 484) and goods bearing THE DOCTOR BRAND name were similar, the marks themselves were similar, and that CDI's earlier registered mark enjoyed a normal degree

---

[6] The Court should further note that in the Hollander Study, which involved showing an ad for THE DOCTOR BRAND, 20% of the respondents who were tallied as mentioning the correct name, typed in "Doctor Brand" without including a preceding article, "the," and 13% merely mentioned "doctor" or "doctors," further supporting the likelihood of some level of confusion caused by the phonetic similarity of the names. SOF at ¶46.

16

of inherent distinctiveness. *Id*. at ¶49. Pursuant to these findings, the Opposition Division found "that there is a likelihood of confusion on the part of the public" between DR. BRANDT and THE DOCTOR BRAND. *Id*. At a minimum, the findings of the Opposition Division demonstrate that a material issue of disputed fact exists regarding the likelihood of confusion between DR. BRANDT and THE DOCTOR BRAND.

The case law Murad relies upon in support of its contention that the USPTO examiner's statements undisputedly demonstrate a likelihood of confusion is also inapplicable. In *Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc.*, 874 F.2d 95 (2d Cir. 1995), the district court rejected a specific finding by the USPTO examiner that the words "Murphy bed" had become generic. In *Pilot Corp. of America v. Fisher-Price, Inc.*, 501 F. Supp. 2d 292 (D. Conn. 2007), the district held that the USPTO's publication of the junior user's mark for opposition "***while not conclusive***" was entitled to great weight. In accordance with *Pilot Corp.*, however, if the USPTO's determination that a mark is not likely to cause confusion is "not conclusive," such a determination cannot be relied upon as undisputable evidence in support of summary judgment.

> **D.  The Issue Of Abandonment Should Not Be Resolved On Summary Judgment.[7]**

"To show that a mark has been abandoned, there must be evidence that the use of the mark has been discontinued with the intent not to resume use." *Wind Turbine Ind. Corp. v. Jacobs Wind Electric Co., Inc.*, 2010 WL 4723385, at *8 (D. Minn. Nov. 16, 2010) (citing 15 U.S.C. § 1127; *On- line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir.

---

[7] Murad's Motion posits its request for summary judgment as to Count II of the Amended Complaint (Cancellation for "Confusing Similarity") on the same arguments raised in support of the contention that the THE DOCTOR BRAND mark does not create a likelihood of confusion with the DR. BRANDT Trademarks. Def.'s Mot. at p. 15. Accordingly, CDI's arguments in opposition to Murad's contention that there is no likelihood of confusion likewise demonstrate that Murad is not entitled to summary judgment as to Count II of the Amended Complaint.

2000)); *see also Ellipse Communications, Inc. v. Caven*, 2009 WL 3398709, at *7 (N.D. Tex. Oct. 16, 2009) ("A trademark is deemed 'abandoned' when the owner has discontinued use of the mark with intent not to resume such use") (citing *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 293 (5th Cir. 2004)). "Generally, abandonment is a question of fact." *Wind Turbine Ind. Corp.*, at *8; *Ellipse Communications, Inc.*, at *7 ("Intent is generally a question of fact for the jury").

Once again, Murad's only support for its contention that THE DOCTOR BRAND trademark was not abandoned is the self-serving affidavit of Murad's General Manager, Richard S. Murad. Murad cannot defeat CDI's allegation that Murad has "ceased use of the mark THE DOCTOR BRAND in interstate commerce and has therefore abandoned the same" [Am. Compl., DE #4, at ¶47] by submitting a self-serving affidavit that denies the same – indeed, that is the equivalent of denying the allegation through a responsive pleading. *Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990) ("An averment of no intent to abandon is little more than a denial in a pleading, which is patently insufficient to preclude summary judgment").

Furthermore, because the parties have yet to conduct a single deposition in this matter, *see supra* at n. 3, including but not limited to the deposition of Richard Murad, Murad's request for summary judgment on this issue is premature. *Dean*, 951 F.2d at 1213-14; *Snook,* 859 F.2d at 870; *Nelson*, No. 07-61416, 2008 WL at *1.

### III.   CONCLUSION.

As the foregoing demonstrates, genuine issues of material fact are in dispute with respect to each and every count of the Amended Complaint. Accordingly, Murad's Motion for Summary Judgment should be denied on all counts.

        Respectfully Submitted,

        FELDMAN GALE, P.A.
        ***Counsel for Plaintiff***
        One Biscayne Tower, 30th Floor
        2 South Biscayne Boulevard
        Miami, Florida 33131
        Telephone:  305-358-5001
        Telefax:  305-358-3309

        By: *s/ James A. Gale*
           James A. Gale / Fla. Bar No. 371726
           E-Mail:  JGale@FeldmanGale.com
           Stephanie C. Alvarez / Fla. Bar No. 127280
           E-Mail:  SAlvarez@FeldmanGale.com
           Richard Guerra / Fla Bar No. 689521
           E-Mail: RGuerra@FeldmanGale.com

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY on this 29th day of July, 2011, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  The undersigned also certifies that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        /s/ *Richard Guerra*

**SERVICE LIST**
*Cosmetic Dermatology, Inc. v. Murad, Inc.*
**Case No.: 1:10-CV-21125-WMH
United States District Court, Southern District of Florida**

Michael A. Painter, Esq.
E-Mail: painter@ikplaw.com
Issacman, Kaufman & Painter
10250 Constellation Blvd.
Suite 2900
Los Angeles, California 90067
Telephone: 310-881-6800
Facsimile: 310-881-6801
***Counsel for Defendant***
*Via transmission of Notices of Electronic Filing generated by CM/ECF*

Mark E. Stein, Esq.
E-Mail: MStein@HLGLawyers.com
Higer Lichter & Givner, LLP
18305 Biscayne Boulevard
Suite 402
Aventura, FL 33160
Telephone: 305-933-9970
Facsimile: 305-933-0998
***Counsel for Defendant***
*Via transmission of Notices of Electronic Filing generated by CM/ECF*