UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.10-CV-21125-HOEVELER

CDI, INC., a Florida corporation,

       Plaintiff,

v.

MURAD, INC., a California corporation,

       Defendant.
_____/

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

I    **THE LACK OF SIMILARITY BETWEEN THE DR. BRANDT TRADEMARK AND THE DOCTOR BRAND TRADEMARK PRECLUDES A FINDING OF LIKELY CUSTOMER CONFUSION.**

    A.    **The Repeated Actions by the USPTO Support a Finding That There is No Likelihood of Confusion Between Murad's THE DOCTOR BRAND Trademark and Plaintiff's DR. BRANDT Trademark.**

The Complaint alleges that THE DOCTOR BRAND trademark infringes two registered forms of the DR. BRANDT trademark (Registration Nos. 3,483,036 and 3,084,588). The applications that matured into these two registrations were filed either after Murad had filed its application to register THE DOCTOR BRAND trademark or, most importantly, after THE DOCTOR BRAND trademark was registered. Two additional applications to register forms of the DR. BRANDT trademark were filed after registration of Murad's THE DOCTOR BRAND trademark. *Painter Declaration, ¶¶2, 3; Exhibits 8-11, inclusive.* Where an application to register a trademark is filed that so resembles a mark previously registered by the United States Patent and Trademark Office ("USPTO") it will be refused registration. *15 U.S.C. §1052(d).* If an application is found to be in conflict with a previously filed application, the applicant is to be notified of the conflict. *Trademark Manual of Examining Procedures, §1208.02(b), p.1200-217*

1

(7th Edition). In this case, at no time were any of the plaintiff's four applications that matured into Exhibits 8-11, inclusive, refused registration or was plaintiff advised of a conflict based upon Murad's THE DOCTOR BRAND trademark.

Subsequent to the commencement of this litigation, plaintiff filed four new applications to register THE ONE AND ONLY DOCTOR BRANDT, THE REAL DOCTOR BRANDT, THE ORIGINAL DOCTOR BRANDT and THE DOCTOR BRANDT. *Painter Declaration,¶4; Exhibits 12-15, inclusive.* It is submitted the purpose of these applications was solely to attempt to induce the USPTO to refuse registration based upon Murad's THE DOCTOR BRAND trademark. However, this tactic failed and each of the four applications filed on August 26, 2010 was allowed. In each allowance, the Trademark Examiner stated that, following a search of the records of the USPTO, no similar registered or pending marks were found that would bar registration under §2(d) of the Lanham Act. *Painter Declaration, ¶5; Exhibits 16 - 19, inclusive.*

Plaintiff is now requesting the Court to find there is a triable issue of fact as to whether THE DOCTOR BRAND is likely to be confused with the DR. BRANDT trademark. However, plaintiff has failed to substantively address the actions taken by the USPTO. It has been held that an ex parte decision finding that a mark is not likely to cause confusion is "a factor which, while not conclusive, is entitled to great weight." *Pilot Corp. of America v. Fischer-Price, Inc., 501 F.Supp.2d 292, 302-3 (D. Conn., 2007).* Plaintiff's response to the determinations made by the Trademark Examiner in each of the eight applications filed is solely that "Murad's Motion assumes that it is undisputed that the Examiner discovered THE DOCTOR BRAND mark during the prosecution of each of the CDI trademarks..." *Opposition, ¶II.C.* This is no assumption.

The prosecution histories of trademark applications are maintained and are accessible on the TESS database of the USPTO. The prosecution history of each application includes a document described as "Xsearch Summary." This identifies the search strategy used by the Trademark Examiner and the number of relevant trademarks in the TESS database. Prior to issuing the Office Action with respect to the application to register THE DOCTOR BRANDT (Exhibit 19), the Trademark Examiner prepared a search summary, *Supplemental Painter Declaration; Exhibit 43.* The search strategy defined in Exhibit 43 includes access to the records of Murad's THE DOCTOR BRAND trademark. The search summaries for the other seven applications filed by plaintiff are the same. *Supplemental Painter Declaration, ¶4; Exhibits 19, 43.*

2

Citing *3 McCarthy on Trademarks, §19:6*, plaintiff also argues that Murad's Motion "ignores the principle that no search can guarantee that a conflict with another mark may arise." Unfortunately, plaintiff's reliance is inappropriate since the section relates only to privately conducted searches, not to searches performed by the USPTO. Plaintiff also relies on the decision of the Opposition Division in the European Union. The decision has been appealed. *Supplemental Painter Declaration*, ¶5. It is therefore submitted the action taken by the USPTO substantially supports a finding that, as a matter of law, there is no likelihood of customer confusion between the DR. BRANDT trademarks and Murad's THE DOCTOR BRAND trademark.

### B. Likely Customer Confusion Between Two Trademarks Requires an Evaluation of Similarities in Sight, Sound and Meaning.

CDI's Opposition contends that Murad has not shown that the marks of plaintiff and defendant are sufficient dissimilar to negate a finding of likely customer confusion. *Opposition, ¶II,B.3., p.7*. Whether confusion is likely requires the Court to examine "the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks." *E. Remy Martin & Co. v. Shaw Ross International Imports, Inc.*, 756 F.2d 1525, 1531 (11th Cir., 1985). Visually, there are no common words or terms in the marks of plaintiff and defendant. The meaning of the plaintiff's mark is merely the identity of the founder of the plaintiff. With regard to Murad's mark, the word BRAND is defined as: "a class of goods identified by name as the product of a single firm or manufacturer." *Merriam-Webster On-line Dictionary (www.merriam-webster.com)*. On this basis, it is submitted the meaning of THE DOCTOR BRAND trademark is a product created by a doctor. There is absolutely no similarity whatsoever regarding the appearance or meanings of the two marks.

On the issue of audible similarity, plaintiff states that:

Murad admits that [t]hey are audibly identical and that there is similarity in pronunciation between the two. *Opposition, ¶II.B.3, p.7,8*.

Any inference that Murad has admitted that the marks in their entireties are audibly identical or pronounced in a similar manner is blatantly false. Murad's Motion states:

The only common element in the marks at issue is the respective uses of the terms DOCTOR or DR. They are audibly identical. The remaining elements of the two marks are different. *Motion for Summary Judgment, §III.B.2., p.9.*

Plaintiff relies on the decision in *Fuddrucker's, Inc. v. Fudpucker's, Inc., 436 F.Supp.2d 1160 (N.D. Fla., 2006)*, for the proposition that "similarity in sound of Fuddrucker's and Fudpucker's favors likelihood of confusion." *Opposition, ¶III.B.3, p. 8.* It is submitted plaintiff has misstated the actual holding of the Court. In fact, while the *Fuddrucker's* Court did find the marks audibly similar, the decision for finding likelihood of confusion follows the standard requiring an examination of the three factors relevant to a finding of likely confusion (i.e., sight, sound and meaning). *Fuddrucker's, Inc. v. Fudpucker's, Inc., supra, 436 F.Supp.2d at 1271-72.* Plaintiff also argues that the decision in the case of *Crown Radio Corp. v. Soundscriber, 506 F.2d 1392 (CCPA, 1974)* is authority for the proposition that similarity in sound between words weighs in favor of a likelihood of confusion. This contention is misleading. The decision of the CCPA in the *Crown Radio Corp.* case follows the general rule required in an examination of sight, sound and meaning and specifically states:

> As we stated ..., confusing similarity cannot be predicated on auditory response alone and one must consider the impression on the mind where stimuli of the auditory nerve are registered. *Crown Radio Corp. v. Soundscriber, supra, 506 F.2d at 1393.*

It is submitted the action taken by the USPTO set forth in detail in Paragraph I.A. hereinabove is fully consistent with prevailing authority relating to the weight to be accorded audible similarities between marks. Applications for registration are examined in accordance with the rule that audible similarity is only one factor in determining whether there is a likelihood of confusion between marks. *Trademark Manual of Examining Procedures, §1407.01(b)(iv), p. 1200-183 (7th Edition).*

Murad has conceded the similarity of the channels of trade. However, as it relates to sales in the United States, the only similarity is the sales of Murad's products through Internet sites. When the products of the parties are viewed, it is clear there are no visual similarities. *Supplemental Murad Declaration, ¶1; Exhibits 37, 38.* Given the absence of any visual similarities or similarity in meanings, the prior actions by the USPTO are fully consistent with

4

judicial authority and support a finding that, as a matter of law, there is no likelihood of confusion between the marks of plaintiff and defendant.

### C. Any Incompleteness in The Record is The Responsibility of Plaintiff.

Plaintiff takes the position that the issues relating to the defendant's intent and abandonment of Murad's mark should not be decided by summary judgment. After referring to the Affidavit of Murad's General Manager, Richard S. Murad, as being "self-serving," plaintiff contends it "has not yet had the opportunity to take the depositions of those with knowledge regarding the facts that may be material to the issues, including, but not limited to the deposition of Richard Murad." *Opposition, ¶II.B.5, pp. 9,10.* The contention is blatantly false. On February 16, 2011 plaintiff's counsel was advised that defendant would agree to any reasonable request to a continuance of the response date to provide plaintiff with the opportunity to conduct the depositions of both Richard Murad and defendant's expert witness, Kenneth Hollander. Plaintiff made absolutely no effort to take the depositions or seek time to take discovery pursuant to Rule 56(d)(2), F.R.Civ.P. *Supplemental Painter Declaration, ¶2; Exhibit 39.* It is therefore submitted that any perceived incompleteness of the record is solely the fault of plaintiff and should therefore be deemed to be waived. Based on the record before the Court, it is submitted defendant's Motion for Summary Judgment should be granted.

## II   THE CONSUMER SURVEY CONDUCTED BY KENNETH HOLLANDER MEETS ALL APPROPRIATE STANDARDS AND SHOULD BE GIVEN SUBSTANTIAL WEIGHT IN SUPPORTING A FINDING OF NO LIKELIHOOD OF CONFUSION.

### A. Legal Standard.

Unless a survey contains such serious flaws that reliance on its results would be unreasonable, alleged technical deficiencies in a survey presented in a Lanham Act action affect only the weight to be accorded the survey and not its admissibility. *Jelly Beans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 844 (11th Cir., 1983); Smith v. Wal-Mart Stores, Inc., 537 F.Supp.2d 1302, 1321 (N.D. Ga., 2008).* The Opposition does not take issue with the qualifications of Kenneth Hollander to design and conduct a consumer confusion survey and to analyze its results. On this basis, it is submitted Mr. Hollander is qualified to testify as an expert

5

in this matter. For a survey to be trustworthy, the proponent must establish foundation evidence showing that: (1) the universe was properly defined; (2) a representative sample of that universe was selected; (3) the questions to be asked of interviewees were framed in a clear, precise and non-leading manner; (4) sound interview procedures were followed by competent interviewers who had no knowledge of the litigation or the purpose of which the survey was conducted; (5) the data gathered was accurately reported; (6) the data was analyzed in accordance with acceptable statistical principles; and (7) objectivity of the entire process was assured. *Id.* In this case, plaintiff has alleged flaws in the Hollander survey regarding to the format employed, the universe selected and treatment of alleged phonetic similarity.

B. **Survey Format**.

Of the formats available, the Hollander survey utilized the "Eveready format." It is understood that, in a survey conducted with an Eveready format, respondents are shown the product of the accused infringer and asked questions such as: (1) who do you think puts out this product?; (2) what makes you think so?; and (3) name any other products put out by the same concern. *Simon & Schuster, Inc. v. Dove Audio, Inc., 970 F.Supp. 279, 289 (S.D.N.Y., 1997).* With respect to marks that are considered to be well-known, the Eveready format and test has been referred to as "the gold standard for fundamental cognitive and marketing reasons." *6, McCarthy on Trademarks and Unfair Competition, §32:173.50, p.32-371 (4th Edition).*

Paragraphs 8 and 9 of the Amended Complaint in this action prominently extol the plaintiff, Dr. Frederic Brandt and the products by stressing the vast amount of advertising and promotion of the products identified by the DR. BRANDT mark. These allegations are enhanced by statements on plaintiff's Internet site. *Supplemental Painter Declaration, ¶3; Exhibit 40.* The Eveready format was selected for use by Mr. Hollander specifically because of these claims. *Hollander Declaration, ¶¶13-19, inclusive.* Since the statements of plaintiff dictated that Mr. Hollander treat the DR. BRANDT trademark as well-known, it is submitted use of the Eveready format was appropriate. The Ossip Declaration claims Eveready format is inappropriate solely on the basis there are many over-the-counter products to treat acne and skin blemishes. *Ossip Declaration, ¶¶10-14, inclusive.* However, all evidence in the record supports a finding that the DR. BRANDT trademark is well-known. In fact, the assumptions made by Mr. Ossip are in total

contradiction to Paragraphs 8 and 9 of the Amended Complaint and the claims asserted on plaintiff's Internet site. On this basis, it is submitted that use of the Eveready format for the survey was an appropriate decision.

### C.      Selection of Universe.

A survey to test likelihood of confusion must attempt to replicate the thought processes of consumers encountering the disputed mark as they would in the marketplace. The closer the survey context comes to marketplace conditions, the greater the evidentiary weight it has. *6, McCarthy on Trademarks and Unfair Competition, §32:163, p.32-335 (4th Edition)*. The selection of the universe by Mr. Hollander was based upon the statistics defining the persons that suffer from acne or skin blemishes. The survey limited participants to those who are 14 - 25 years of age. Statistically, this amounts to approximately 85% of all persons affected. *Hollander Declaration, ¶¶20-22, inclusive; Exhibit 36*. Given that Mr. Ossip admits in Paragraph 17 of this Declaration that he has no definitive information regarding buyers, the objection asserted with respect to the universe selected is without merit. Based on the statistics used, the survey covers at least 85% of prospective purchasers. The universe selected for a survey has been found to be faulty only where it did not cover a substantial portion of the possible purchasers. *Juicy Couture, Inc. v. L'Oreal USA, Inc., 2006 W.L. 1012939 (S.D.N.Y., 2006)*. In the *Juicy Couture* case, the survey did not cover 75% of the potential purchasers. *Juicy Couture, Inc. v. L'Oreal USA, Inc., supra, 2006 W.L. 1012939 at \*24*. It is therefore submitted that a survey universe that constitutes 85% of the prospective purchasers properly replicates the marketplace.

### D.      Treatment of Audible Similarities.

Mr. Ossip criticizes the Hollander survey for its treatment of the perceived audible similarities between the marks. *Ossip Declaration, ¶¶19-21*. Mr. Ossip states that confusion "might" occur if presumed circumstances occurred. Most importantly, the Ossip Declaration states absolutely no facts to justify the criticism. *Hollander Declaration, ¶¶23-25, inclusive*. Mr. Hollander's task was to produce a survey that replicated the marketplace for Murad's products. The relevant channels of trade are Internet sites that display the product. Given the

total lack of any facts which would justify the criticism of plaintiff's expert witness, it is submitted the survey meets all relevant standards and should be given substantial weight.

### E. Plaintiff's Attack on the Hollander Survey Should be Disregarded.

In response to the Hollander survey, plaintiff failed to conduct a consumer survey to support its allegations that Murad's THE DOCTOR BRAND trademark created a likelihood of confusion with the DR. BRANDT trademark. To the contrary, plaintiff relied only on the Declaration of Alvin Ossip to criticize the Hollander survey. A defendant in a trademark infringement action has no burden to produce survey evidence. However, where a plaintiff alleging likelihood of confusion fails to submit survey evidence and relies solely on criticizing of the defendant's survey, this will weigh against the plaintiff's argument of consumer confusion and weigh against any finding of confusion. *Star Industries, Inc. v. Backward & Co., Ltd.*, 412 F.3d 373, 387-8 (2nd Cir., 2005); *Rush Industries, Inc. v. Garnier LLC*, 496 F.Supp.2d 220, 227-28 (E.D.N.Y., 2007). The *Rush* decision is particularly relevant since the facts relating to the plaintiff's reliance solely on Mr. Ossip's criticism of a defendant's survey are almost identical to those in *Rush*. In *Rush*, the Court granted the defendant's motion for summary judgment finding no likelihood of confusion. *Id.*

The United States District Court for the Southern District of Florida has reached the same conclusion based on facts that are substantially the same as those cited in the Second Circuit cases. *Vital Pharmaceuticals, Inc. v. American Body Building Products, LLC*, 511 F.Supp.2d 1303, 1311 (S.D. Fla., 2007). In *Vital Pharmaceuticals*, a defendant contesting a Lanham Act claim produced a consumer survey; the plaintiff produced no survey its own and relied solely on a critique of the defendant's survey. *Supplemental Painter Declaration*, ¶3; Exhibits 41, 42. Most importantly, the Court found the plaintiff's actions justified an award to defendant in the amount of its attorneys' fees pointing out in part that "plaintiff intentionally chose not to present survey evidence." *Vital Pharmaceuticals, Inc. v. American Body Building Products, LLC*, 510 F.Supp.2d 1043, 1049 (S.D. Fla., 2007).

**III  CONCLUSION.**

Based on the foregoing, it is submitted Murad's Motion for Summary Judgment should be granted and judgment awarded to defendant on all counts.

Respectfully submitted,

HIGER LICHTER & GIVNER, LLP
Attorneys for MURAD, INC.
18305 Biscayne Boulevard, Suite 302
Aventura, Florida 33160
Telephone: (305) 933-9970
Facsimile: (305) 933-0998

ISAACMAN, KAUFMAN & PAINTER
Attorneys for MURAD, INC.
10250 Constellation Blvd., Suite 2900
Los Angeles, California 90067
Telephone: (310) 881-6800
Facsimile: (310) 881-6801

By:  s/Mark E. Stein
Mark E. Stein, Florida Bar No. 818666
e-mail: mstein@hlglawyers.com
Michael A. Painter
e-mail: painter@ikplaw.com

## **TABLE OF CONTENTS**

**Page**

I    THE LACK OF SIMILARITY BETWEEN THE DR. BRANDT TRADEMARK AND THE DOCTOR BRAND TRADEMARK PRECLUDES A FINDING OF LIKELY CUSTOMER CONFUSION ...................................................................................1

    A.    The Repeated Actions by the USPTO Support a Finding That There is No Likelihood of confusion Between Murad's THE DOCTOR BRAND Trademark and Plaintiff's DR. BRANDT Trademark ...................................................................................................1

    B.    Likely Customer Confusion Between Two Trademarks Requires an Evaluation of Similarities in Sight, Sound and Meaning ....................3

    C.    Any Incompleteness in The Record is The Responsibility of Plaintiff ..........................................................................................................5

II    THE CONSUMER SURVEY CONDUCTED BY KENNETH HOLLANDER MEETS ALL APPROPRIATE STANDARDS AND SHOULD BE GIVEN SUBSTANTIAL WEIGHT IN SUPPORTING A FINDING OF NO LIKELIHOOD OF CONFUSION ..................................................................................5

    A.    Legal Standard ..........................................................................................5

    B.    Survey Format ...........................................................................................6

    C.    Selection of Universe ................................................................................7

    D.    Treatment of Audible Similarities ..........................................................7

    E.    Plaintiff's Attack on the Hollander Survey Should be Disregarded .......8

III    CONCLUSION ........................................................................................................9

## TABLE OF AUTHORITIES

**Page**

*Crown Radio Corp. v. Soundscriber,*
    506 F.2d 1392 (CCPA, 1974) ...........................................................................4, 5

*E. Remy Martin & Co. v. Shaw Ross International Imports, Inc.,*
    756 F.2d 1525 (11th Cir., 1985) ............................................................................3

*Fuddrucker's, Inc. v. Fudpucker's, Inc.,*
    436 F.Supp.2d 1160 (N.D. Fla., 2006) .................................................................4

*Jelly Beans, Inc. v. Skating Clubs of Georgia, Inc.,*
    716 F.2d 833 (11th Cir., 1983) ..............................................................................5

*Juicy Couture, Inc. v. L'Oreal USA, Inc.,*
    2006 W.L. 1012939 (S.D.N.Y., 2006) ..................................................................7

*Pilot Corp. of America v. Fischer-Price, Inc.,*
    501 F.Supp.2d 292 (D. Conn., 2007) ....................................................................2

*Rush Industries, Inc. v. Garnier LLC,*
    496 F.Supp.2d 220 (E.D.N.Y., 2007) ................................................................8,9

*Simon & Schuster, Inc. v. Dove Audio, Inc.,*
    970 F. Supp. 279 (S.D.N.Y., 1997) ......................................................................6

*Smith v. Wal-Mart Stores, Inc.,*
    537 F.Supp.2d 1302 (N.D. Ga., 2008) ..................................................................5

*Star Industries, Inc. v. Backward & Co., Ltd.,*
    412 F.3d 373 (2nd Cir., 2005) ...............................................................................8

*Vital Pharmaceuticals, Inc. v. American Body Building Products, LLC,*
    510 F.Supp.2d 1043 (S.D. Fla., 2007) ..................................................................8

*Vital Pharmaceuticals, Inc. v. American Body Building Products, LLC,*
    511 F.Supp.2d 1303 (S.D. Fla., 2007) ..................................................................8

STATUTES

*15 U.S.C. §1052(d)* ...................................................................................................................1

**MISCELLANEOUS**

*Merriam-Webster On-line Dictionary (www.merriam-webster.com)* ...........................................3

*Trademark Manual of Examining Procedures*

  *§1208.02(b), 7th Edition* ....................................................................................................1
  *§1407.01(b)(iv), 7th Edition* ..............................................................................................4

*3, McCarthy on Trademarks and Unfair Competition*
  *§19:6* .................................................................................................................................3
*6, McCarthy on Trademarks and Unfair Competition,*
  *§32:163 (4th Edition)* .......................................................................................................7
  *§32:173.50 (4th Edition)* .................................................................................................. 6

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 15, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notice of Electronic Filing Generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**HIGER LICHTER & GIVNER, LLP.**
*Counsel for Defendant*
18305 Biscayne Boulevard
Suite 302
Aventura, Florida 33160
Telephone: 305-933-9970
Facsimile: 305-933-0998

By: s/ Mark E. Stein

## SERVICE LIST
CDI, INC., a Florida Corporation v. MURAD, INC., a California Corporation.
CASE NO. 10-21125-CIV-HOEVELER

Stephanie Carolyn Alvarez, Esq.
James Anthony Gale, Esq.
Feldman Gale, P.A.
One Biscayne Tower, 30th Floor
2 South Biscayne Blvd.
Miami, Florida 33131
Tel: 305-397-0803
Fax: 305-358-3309
Email: salvarez@feldmangale.com
Email: jgale@feldmangale.com
*Counsel for Plaintiff*
*Via transmission of Notices of Electronic Filing generated by CM/ECF*


Michael A. Painter, Esq.
Isaacman Kaufman & Painter, P.C.
10250 Constellation Blvd.
Suite 2900
Los Angeles, California 90067
Tel: 310-881-6800
Fax: 310-881-6801
Email: painter@ikplaw.com
*Counsel for Defendant*
*Via transmission of Notices of Electronic Filing generated by CM/ECF*